# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MetroPCS, a brand of T-Mobile, Inc.,

    Plaintiff

v.

A2Z Connection, LLC, et al.,

    Defendants

2:15-cv-01412-JAD-CWH

**Order Granting in Part Motion for Default Judgment and Permanent Injunction**

[ECF No. 40]

    MetroPCS sues A2Z Connection, LLC, A2Z, LLC ("A2Z"), and three of A2Z's agents, Amir, Asim, and Seher Qureshi, for trademark infringement and related claims and seeks monetary damages, recovery of defendants' inventory of MetroPCS phones and products bearing MetroPCS's marks, and permanent injunctive relief.[1] Defaults have been entered against all defendants.[2] Because defendants refuse to defend against MetroPCS's allegations—despite being served with process[3]—MetroPCS asks me to enter default judgment against each of them and to permanently enjoin them from engaging in the unlawful activities described in its complaint.[4] Having weighed the *Eitel* factors, I grant MetroPCS's motion for default judgment in part and award MetroPCS a permanent injunction.

## Background

    T-Mobile sells wireless phones under the brand MetroPCS for use with MetroPCS service on the T-Mobile wireless network.[5] These phones are sold at prices below wholesale cost to MetroPCS

---

[1] ECF No. 1.

[2] ECF Nos. 23, 31, 33.

[3] ECF Nos. 11, 24–26.

[4] ECF No. 1; ECF No 40-5 at ¶¶ 2, a–i.

[5] ECF No. 1 at ¶ 1.

so that the phones are more widely accessible to customers.[6] MetroPCS alleges that defendants and their co-conspirators are engaged in an unlawful scheme to illegally acquire the phones through various methods, "unlocking" the phones so they will operate on other wireless networks but not on the MetroPCS network, and reselling the unlocked MetroPCS phones to people other than MetroPCS customers.[7] MetroPCS alleges that defendants obtain the phones through theft or fraud and divert them to other markets where phones are not subsidized, thereby converting MetroPCS's investment dollars into profits for defendants and their co-conspirators.[8] MetroPCS also asserts that defendants' actions have resulted in a shortages of available MetroPCS phones, thereby substantially harming its relationship with retailers, dealers, and consumers because it is not able to supply retailers and dealers with a sufficient number of phones to satisfy the high customer demand.[9] MetroPCS therefore "seeks to recover damages from the harm caused by defendants' [phone] theft and trafficking scheme, and to obtain an injunction prohibiting defendants from continuing to perpetuate the scheme."[10]

After the defendants all failed to appear or defend against MetroPCS's allegations, the Clerk of Court entered default against all of the defendants, and MetroPCS moved for default judgment against them.[11] I denied MetroPCS's motion without prejudice because it failed to address the *Eitel v. McCool* factors.[12] MetroPCS renewed its motion,[13] which I now address.

. . .

---

[6] *Id.*

[7] *Id.* at ¶¶ 1–2.

[8] *Id.* at ¶ 3.

[9] ECF No. 1 at ¶¶ 44, 62–63; ECF No. 40 at 26.

[10] *Id.* at ¶ 5.

[11] ECF No. 35.

[12] ECF No. 36.

[13] ECF No. 40.

**Discussion**

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[14] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[15] The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[16] Whether to grant a motion for default judgment lies within my discretion,[17] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[18]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[19]

**A.     Analyzing the *Eitel* factors**

   ***1.     Possibility of prejudice to MetroPCS***

The first *Eitel* factor weighs in favor of granting default judgment against defendants. MetroPCS pursued its claims to recover the damages that it sustained as a result of defendants' acts

---

[14] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[15] *Cripps v. Life Ins. Co. Of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[16] *See* Fed. R. Civ. P. 55(b)(2).

[17] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[18] *Id.* at 1471–72.

[19] *Id.* at 1472.

and to prevent defendants from perpetuating their scheme and causing further reputational and financial harm to MetroPCS.[20] Defendants failed to participate in this case despite MetroPCS's attempts to include them. The defendants' refusal to participate compounds MetroPCS's injuries by requiring it to expend additional resources to further litigate uncontested issues. Without a judgment against defendants, MetroPCS has no other recourse to recover for the injuries that it has sustained.

### 2. *Substantive merits and sufficiency of the claims*

The second and third *Eitel* factors require MetroPCS to demonstrate that it has stated claims on which it may recover.[21] Among others, MetroPCS asserts claims against defendants for federal trademark infringement in violation of § 32(1) of the Lanham Act (15 U.S.C. § 1114), federal common law trademark infringement, false advertising in violation of § 43(a) of the Lanham Act (15 U.S.C. §§ 1125(a)(1)(A) and (B)), contributory trademark infringement, and common law unfair competition.[22] The complaint sufficiently sets forth these claims.

MetroPCS alleges that it has the right to use and enforce the MetroPCS marks on and in connection with its products and services.[23] MetroPCS also alleges that defendants' "conspiracy to sell and offer for sale materially-different MetroPCS [phones], removed from packaging[,] . . . devoid of the manufacturer's warranty," and that have been altered so as to no longer work on the MetroPCS network, "has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source or origin of defendants' infringing products, and the relationship between [MetroPCS] and defendant[s]."[24] MetroPCS asserts that defendants' actions were intentional, malicious, willful, and done in bad faith and have caused MetroPCS substantial harm and, despite being sued here, defendants are still actively engaged in their scheme as evidenced by their

---

[20] ECF No. 40 at 16.

[21] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[22] *See id.* at 16, 32–37 (counts 1, 11–13).

[23] ECF No. 1 at ¶¶ 30–32.

[24] ECF No. 40 at 10.

recent attempts to sell fraudulently obtained MetroPCS phones to MetroPCS's private investigators.[25]

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."[26] "While actual damages are not a required element for establishing trademark infringement, possible remedies include injunctive relief, award of defendant's profits, the costs of the action, and attorneys' fees."[27] The same test applies to common law trademark infringement and unfair competition claims.[28] Contributory infringement extends to those who knowingly play a significant role in accompanying the unlawful purpose.[29]

Accepting MetroPCS's well-pled factual allegations as true, as I must in deciding a motion for default judgment, I find that MetroPCS has pled and proved its trademark infringement, contributory infringement, and common law unfair competition claims against defendants. Because these claims allow MetroPCS to recover the complete damages and injunctive relief that it seeks, I do not address the merits of MetroPCS's remaining claims and limit my analysis of the remaining *Eitel* factors to only these claims.

### 3. *Amount at stake*

The fourth *Eitel* factor requires me to "assess whether the recovery sought is proportional to

---

[25] ECF Nos. 1 at ¶ 54; 40 at 8; 40-2 at ¶¶ 5, 9.

[26] *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

[27] *Herb Reed Enterprises, Inc. v. Bennett*, 2011 WL 2607079 at *2 (D. Nev. June 30, 2011) (citing 15 U.S.C. §§ 1114(1), 1116, 1117(a)).

[28] *See, e.g., New West Corp. v. NYM Co. of Ca., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (finding that likelihood of confusion is the test regardless of the violation).

[29] *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).

the harm caused by defendants' conduct."[30] The Lanham Act provides that when a trademark violation occurs under 15 U.S.C. § 1125(a), (c), or (d), a plaintiff is entitled,

> subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed . . . . If the court find[s] that the amount of the recovery based on profits is either inadequate or excessive [it] may in its discretion enter judgment for such sum as [it] find[s] just, according to the circumstances of the case. Such sum . . . constitute[s] compensation and not a penalty.[31]

When determining whether to award a plaintiff attorney's fees, "a case is considered exceptional 'when the infringement is malicious, fraudulent, deliberate, or willful.'"[32] "Egregious conduct is not required[,] . . . nor is bad faith."[33] When determining the amount of damages to award, if any, I have "discretion to increase the profit award above the net profits proven" if I find the amount of the recovery "inadequate."[34] I "must apply 'principles of equity' and ensure that the defendant 'may not retain the fruits, if any, of unauthorized trademark use or continue that use,'" while also ensuring that "'plaintiff is not . . . [given] a windfall.'"[35]

"The Lanham Act allows an award of profits only to the extent the award 'shall constitute compensation and not a penalty.'"[36] "The district court ought to tread lightly when deciding whether to award increased profits, because granting an increase could easily transfigure an

---

[30] *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citation omitted).

[31] *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015) (quoting 15 U.S.C. § 1117(a)).

[32] *Id.* at 1078 (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)).

[33] *Id.* (internal quotations omited).

[34] *Id.* (citing 15 U.S.C. § 1117(a)).

[35] *Id.* (quoting 15 U.S.C. § 1117(a); *Bandag, Inc. v. Al Bolster's Tire Stores, Inc.,* 750 F.2d 903, 918 (9th Cir. 1984)).

[36] *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (quoting 15 U.S.C. § 1117(a)).

otherwise-acceptable compensatory award into an impermissible punitive measure."[37]

MetroPCS seeks $2,403,660 in damages, $28,037.05 in attorney's fees and costs, and $6,643.75 in "investigation fees."[38] In calculating its damages, MetroPCS has shown through the sworn declaration of Josh Neil, its Vice President of Field Operations and Financial Control, that as of the date that the complaint was filed, defendants have provided MetroPCS's investigators with written sales offers for 1,138 MetroPCS phones.[39] MetroPCS asserts that it has an average investment of $155 in each phone and that each phone sold to a MetroPCS customer will generate net revenues of $524.[40] Thus, each phone that defendant sells to a non-MetroPCS customer results in $679 in damages ($155+$524=$679) to MetroPCS.[41] MetroPCS multiplies the 1,138 phones that defendants have attempted to sell to its investigators by the $679 in damages it sustained on each phone, to arrive at a total damage amount of $801,220.00.[42] MetroPCS then seeks to triple that amount to $2,403,660 under the Lanham Act's treble damages provision.[43]

I conclude that the base amount of damages that MetroPCS seeks ($801,220) is a reasonable compensatory award when balanced against defendants' conduct and in light of the fact that MetroPCS seeks damages only for the phones that defendants actually tried to sell to MetroPCS's private investigators, when defendants likely procured and sold many more MetroPCS phones to other customers, further compounding MetroPCS's damages beyond the scope of what MetroPCS seeks here. However, MetroPCS has failed to establish its claim for treble damages.

---

[37] *Fifty-Six Hope Road Music, Ltd.*, 778 F.3d at 1077 (citing *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1114–15 (9th Cir. 2012)).

[38] ECF No. 40 at 28–29.

[39] ECF No. 40 at 20; ECF No. 40-3 at 3–4.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* (citing 15 U.S.C. § 1117(a)).

In support of its prayer for treble damages, MetroPCS asserts that defendants knowingly, willfully, and deliberately engaged in their fraudulent scheme, and continue to engage in the scheme, as evidenced by defendants' offer to sell MetroPCS's private investigators MetroPCS phones after this case was initiated and after all defendants had been served with a copy of the summons and complaint. I find that these facts make this an exceptional case, warranting the award of attorney's and investigation fees that MetroPCS seeks. I also find that MetroPCS clearly proved these fee amounts by submitting copies of the detailed billing statements it received from its attorneys and its investigator, which I reviewed and conclude are reasonable.[44] I also find that these facts support granting MetroPCS's motion insofar as it seeks to recover all phones bearing the MetroPCS mark from defendants so they can no longer harm MetroPCS by selling their phones. But I do not find that an award of treble damages is supported by the facts in this case; rather, treble damages would transfigure MetroPCS's otherwise-acceptable compensatory award into an impermissible punitive measure. MetroPCS's facts and evidence do not suggest otherwise. By failing to appear and defend against MetroPCS's claims, defendants have failed to prove any deductions from the amounts MetroPCS claims.

Accordingly, I find that the $801,220 in damages, $28,037.05 in attorney's fees and costs, and $6,643.75 in investigation fees that MetroPCS seeks, for a total of $835,900.80, sufficiently compensates MetroPCS for its damages. I also find that the return of all MetroPCS phones in defendants' possession is reasonable to prevent any further unauthorized use of MetroPCS's trademark by defendants.

### 4. *Possibility of dispute*

Under the next *Eitel* factor, I consider the possibility that material facts are disputed. MetroPCS has adequately alleged its trademark infringement, contributory infringement, and common law unfair competition claims against defendants. When defendants failed to appear, they admitted all of the non-conclusory material facts alleged in MetroPCS's complaint. Because those

---

[44] *See* ECF No. 40-1 at 9–32; ECF No. 40-4 at 2–5.

facts are presumed true and defendants have failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment against defendants.

### 5. *Possibility of excusable neglect*

The sixth *Eitel* factor requires me to consider whether defendants' default may have resulted from excusable neglect. After the defendants were served with process,[45] they failed to make an appearance in this case. Over a year and a half has passed since the Clerk entered default against each defendant,[46] and no effort has been made by any of them to set aside the defaults. It is thus unlikely that defendants' defaults are the product of excusable neglect.

### 6. *Policy for deciding cases on the merits*

Despite being served with a demand letter and process, defendants have not responded to MetroPCS's complaint. Their refusal renders a decision on the merits "impractical, if not impossible."[47] Entry of default judgment is therefore appropriate. I find that defendants' trademark infringement, contributory infringement, and common law unfair competition violations justify an award in the amount of $835,900.80, and I direct the Clerk of Court to enter judgment in this amount against defendants and in favor of MetroPCS. I also order defendants to return all phones in their possession bearing the MetroPCS mark to MetroPCS.

## B. Permanent injunction

"Avoiding harm to consumers is an important interest that is independent of the senior user's

---

[45] *See* ECF No. 11 (Amir Qureshi was served with the summons and complaint on August 4, 2015); ECF No. 24 (A2Z Connection, LLC was served with the summons and complaint on August 6, 2015); See ECF Nos. 25, 26 (A2Z, LLC and Asim Qureshi were served with the summons and complaint on August 30, 2015); and ECF No. 27 (Seher Qureshi was served with the summons and complaint on October 22, 2015).

[46] *See* ECF No. 23 (clerks entry of default against Amir Qureshi on September 2, 2015); ECF No. 31 (clerks entry of default against A2Z Connection, LLC; A2Z, LLC; and Asim Qureshi on November 12, 2015); and ECF No. 33 (clerks entry of default against Seher Qureshi on November 17, 2015).

[47] *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citing *Columbia Pictures Tele., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)).

interest in protecting its business."[48] Although likelihood of confusion is a sufficient ground for issuance of an injunction,[49] a "[p]laintiff is not automatically entitled to injunction under [the] Lanham Act simply because it proved its affirmative trademark claims."[50] To obtain a permanent injunction, a plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.[51]

        Defendants have willfully infringed upon MetroPCS's trademark and they continue to do so, as evidenced by their recent attempts to solicit MetroPCS's private investigators to purchase new MetroPCS phones from them. MetroPCS has also suffered irreparable injury in the form of lost business and harm to its reputation when customers purchase the unlocked MetroPCS phones from defendants, only to learn that the modified phones no longer work on MetroPCS's network. This reputational harm to MetroPCS is not quantifiable as monetary damages. After balancing the hardships between MetroPCS and defendants, I find that they weigh strongly in MetroPCS's favor because defendants have proven their willingness to infringe on MetroPCS's trademark even after being served with process in this suit. Thus, if a permanent injunction is not issued, MetroPCS will be forced to repeatedly file suit against defendants to prevent their conduct. I also find that the public interest would not be disserved by issuing a permanent injunction because the injunction would eliminate marketplace confusion by removing "unlocked" MetroPCS phones from the marketplace that do not work on the MetroPCS network. Accordingly, I grant MetroPCS's motion

---

[48] *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002).

[49] *Pacific Telesis Group v. International Telesis Communications*, 994 F.2d 1364 (9th Cir. 1993).

[50] *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894 (9th Cir. 1997).

[51] *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

for a permanent injunction.[52]

Defendants will be permanently enjoined from:

- accessing PCS's or T-Mobile's computer networks either directly or indirectly;
- using marks owned or used by MetroPCS now or in the future, or marks that are likely to cause confusion with MetroPCS marks without MetroPCS's prior written authorization; and
- holding themselves out as being associated with, employed by or on behalf of, or acting as an agent, representative, or authorized partner of MetroPCS without MetroPCS's prior written authorization.[53]

**Conclusion**

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that MetroPCS's **motion for default judgment and permanent injunction [ECF No. 40] is GRANTED in part**: I award MetroPCS $801,220 in monetary damages, $28,037.05 in attorney's fees and costs, and $6,643.75 in investigative costs, for a total of $835,900.80. Defendants must return to MetroPCS all phones in their possession bearing the MetroPCS mark. Defendants are permanently enjoined from: accessing T-Mobile's networks either directly or indirectly; using marks owned or used by MetroPCS now or in the future, or marks that are likely to cause confusion with MetroPCS marks without MetroPCS's prior written authorization; and holding themselves out as being associated with, employed by or on behalf of, or acting as an agent, representative, or authorized partner of MetroPCS without MetroPCS's prior written authorization.

. . .

. . .

. . .

---

[52] *See Quiksilver, Inc. v. Kymsta Corp.*, 360 F. App'x. 886, 889 (9th Cir. 2009) (holding that a permanent injunction is proper when the harm will only continue); *see also eBay Inc.*, 547 U.S. 388 (finding a four part test including the inability to compensate is necessary to issue a permanent injunction).

[53] The court considered the other categories of injunctive relief that plaintiff demanded but finds all other categories overly broad or too vague to enforce.

The Clerk of Court is directed to enter judgment in favor of MetroPCS and against defendants in the total amount of $835,900.80 and **CLOSE** this case.

DATED June 12, 2017.

_____
Jennifer A. Dorsey
United States District Judge